# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# CEDAR RAPIDS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>        Plaintiff,<br><br>vs.<br><br>VERONICA MOSLEY,<br><br>        Defendant. | No. 05-CR-87-2-LRR<br><br>**SENTENCING**<br>**MEMORANDUM** |

_____

## *I. INTRODUCTION*

In this sentencing, the court decided a number of important legal issues. As a threshold matter, the court decided whether to compel specific enforcement of a plea agreement between the parties. In calculating Defendant Veronica Mosley's advisory Sentencing Guidelines range,[1] the court decided (1) whether Defendant was subject to a

---

[1] Although application of the Sentencing Guidelines is no longer mandatory, [in the Eighth Circuit] district courts are still required to consult the Guidelines and take them into account in calculating a defendant's sentence. A district court must calculate a defendant's advisory Guidelines sentencing range based on his total offense level, criminal history category, and any appropriate departures. The court may also vary from the advisory Guidelines range based on the factors set forth in 18 U.S.C. § 3553(a) as long as the resulting sentence is reasonable. Proper application of the Guidelines "remains the critical starting point" for fashioning a reasonable sentence under § 3553(a), and a sentence within the properly calculated Guidelines range is presumed to be reasonable.

(continued...)

six-level increase pursuant to USSG §2B3.1(b)(2)(B) for use of a firearm; (2) whether Defendant was subject to a four-level enhancement pursuant to USSG §3B1.1 for her role in the offense; (3) whether Defendant was subject to a two-level increase pursuant to USSG §3C1.1 for obstruction of justice; and (4) whether Defendant was entitled to a three-level reduction pursuant to USSG §3E1.1 for acceptance of responsibility.

## II. PROCEDURAL BACKGROUND

On November 3, 2005, a grand jury charged Defendant in a four-count Superseding Indictment. Defendant was charged in each count with her four co-defendants, Clifford Frank Brown, Andrew Anthony Avera, Johnny Slaughter and Diontae Smith.

Count 1 charged that, on October 6, 2005, Defendant did knowingly take by force, violence and intimidation and did aid and abet the taking by force, violence and intimidation, from the person and presence of at least one employee of the Ackley State Bank of Iowa Falls, Iowa, money belonging to and in the care, custody, management and possession of the Ackley State Bank, the deposits of which were then insured by the Federal Deposit Insurance Corporation, in violation of 18 U.S.C. §§ 2 and 2113(a). Count 2 charged that, on or about October 6, 2005, Defendant knowingly took, by force, violence and intimidation, from the person and presence of another, approximately $71,500 in money belonging to and in the care, custody, control, management and possession of the Ackley State Bank of Iowa Falls, Iowa, the deposits of which were then insured by the Federal Deposit Insurance Corporation, and in committing such offense, Defendant assaulted and put in jeopardy the life of another person by the use of a dangerous weapon, a firearm, and aided and abetted that offense, in violation of 18 U.S.C.

---

[1](…continued)
*United States v. Jeremiah*, 446 F.3d 805, 807 (8th Cir. 2006) (citing, in part, *United States v. Booker*, 543 U.S. 220, 264 (2005)).

§§ 2 and § 2113(a) and (d). Count 3 charged that, on or about October 6, 2005, Defendant knowingly used and carried and brandishing, and aided and abetted the use and carrying and brandishing of a firearm, that is, a handgun, during and in relation to a crime of violence in violation of 18 U.S.C. §§ 2 and 924(c)(1). Count 4 charged Defendant with knowingly and willfully conspiring and agreeing with her co-defendants on an unknown date in late September or early October of 2005 and continuing until about October 6, 2005, to commit the offense of armed bank robbery in violation of 18 U.S.C. § 371.[2]

On December 12, 2005, Defendant and the government signed a plea agreement ("Plea Agreement"). On December 16, 2005, Defendant appeared before Chief Magistrate Judge John A. Jarvey and pled guilty to Count 2 of the Superseding Indictment. On January 11, 2006, the court accepted Defendant's guilty plea.

On April 21, 2006, the United States Probation Office ("USPO") prepared a Presentence Investigation Report ("PSIR"). On May 31, 2006, the USPO revised the PSIR. On June 23, 2006, the government and Defendant filed their respective sentencing memoranda. On June 27 and 28, 2006, the government and Defendant, respectively, filed supplements to their sentencing memoranda.

On July 7 and August 11, 2006, sentencing proceedings were held at a hearing ("Hearing") before the undersigned. Assistant United States Attorney Robert Teig and Richard Murphy represented the government. Defendant was personally present and represented by Attorney Michael Lahammer. At the conclusion of the Hearing, the court pronounced sentence in a manner consistent with the instant Sentencing Memorandum.

---

[2] For further background, see *United States v. Mosley*, No. 05-CR-87-LRR, 2006 WL 12991 (N.D. Iowa 2006) (denying motion to suppress and adopting *United States v. Brown*, No. 05-CR-87-LRR, 2005 WL 3263911 (N.D. Iowa 2005) (report and recommendation)).

## IV. SPECIFIC PERFORMANCE OF PLEA AGREEMENT

In her sentencing memoranda and at the Hearing, Defendant moved the court to specifically enforce the Plea Agreement. Defendant alleged that the government was attempting to "back out" of the Plea Agreement because it had announced its intention to argue at the Hearing that (1) Defendant was not entitled to a three-level reduction pursuant to USSG §3E1.1 for acceptance of responsibility and (2) Defendant was subject to a two-level increase pursuant to USSG §3C1.1 for obstruction of justice. Defendant asked the court to "preclude the government from advocating any position or argument at the sentencing hearing, or offering any evidence, that violates the Plea Agreement." The government responded that the Plea Agreement permits it to argue about such matters and, in any event, further evidence has come to light which invalidates the Plea Agreement entirely.

The Plea Agreement is a contract between the government and Defendant. *Margalli-Olvera v. INS*, 43 F.3d 345, 351 (8th Cir. 1994). Ordinary contract principles apply. *United States v. Norris*, 439 F.3d 916, 919 (8th Cir. 2006). "[T]he court must apply the federal common law of contracts, which is informed by federal cases, state cases and the Restatement (Second) of Contracts, insofar as such jurisprudence fairly typifies the general law of contracts." *United States v. Bradford*, 433 F. Supp. 2d 1001, 1003 (N.D. Iowa 2006) (Reade, J.) (citing *United States v. Andreas*, 216 F.3d 645, 663 & 663 n.5 (7th Cir. 2000)). If a plea agreement is ambiguous, the ambiguity must be construed against the government. *United States v. Jensen*, 423 F.3d 851, 854 (8th Cir. 2005) (citing *United States v. Andis*, 333 F.3d 886, 890 (8th Cir. 2003)).

"Allowing the government to breach a promise that induced a guilty plea violates due process." *Id.* (citing *United States v. Van Thournout*, 100 F.3d 590, 594 (8th Cir. 1996)). Moreover, allowing the government to breach a promise in a plea agreement

4

jeopardizes "'the honor of the government, public confidence in the fair administration of justice, and the effective administration of justice in a federal scheme of government.'" *Id.* (quoting *United States v. Thompson*, 403 F.3d 1037, 1039 (8th Cir. 2005)).

The parties' Plea Agreement contains typed words that have been crossed-through with a pen and other words that have been handwritten. In pertinent part, the Plea Agreement provides:

> **A.    For the armed bank robbery count (Count 2 of the Indictment):**
>
> Under USSG §2B3.1(a), the offense level should be calculated by starting with a base offense level of 20. ~~The parties stipulate and agree that a firearm was used.~~ The parties further stipulate and agree that the defendant's offense involved property of a financial institution and $71,150 in loss. Therefore the specific offense level characteristics set out in §§2B3.1(b)(1), ~~(b)(2)(B),~~ and (b)(7)(C) are applicable. The application of the specific offense level characteristics results in a ~~10-level~~ *4-level* upward adjustment. The Chapter Two offense level for Count 2 is Level [24[3]].
>
> *A1.    Parties agree to leave open +6 enhancement under [USSG §]2B3.1(b)(2)(B) for determination at sentencing.*
>
> **B.    Acceptance of Responsibility:**

---

[3] Contrary to the bracketed text, the Plea Agreement states that the agreed-upon offense level was 30. At the Hearing, the government conceded that it was "sure [the 30 level] was in error" because in negotiations the parties agreed that Defendant could argue that she was not entitled to a six-level upward adjustment under USSG §2B3.1(b)(2)(B) for use of a firearm, i.e., "an adjustment that got to that level thirty was modified, but the ultimate level thirty was not modified." The court found that the parties agreed to an offense level of 24.

> The parties stipulate and agree, that as of the date of this agreement, [D]efendant appears to qualify for a two-level downward adjustment for acceptance of responsibility. However, the government shall be free to contest the adjustment under USSG §3E1.1(a) should the [D]efendant subsequently fail to continue to accept responsibility by failing to pay the special assessment; by providing false information to the court, the [USPO], or the government; by unlawfully using controlled substances; by attempting to obstruct justice; by breaching this plea agreement; or by acting in a way that is inconsistent with, or failing to act in any way that is consistent with, the granting of the adjustment under USSG §3E1.1(a). If, at the time of sentencing, the court grants a two-level reduction under USSG §3E1.1(a), the United States agrees to make a motion under USSG §3E1.1(b) for an additional one-level reduction, acknowledging the timeliness of the [D]efendant's decision to plead guilty.

Plea Agreement at ¶ 7 (docket no. 89-2) (bolded portions in original, handwritten portions italicized, strikeouts in original). Elsewhere, the Plea Agreement provides that the parties agreed that at sentencing they "may make whatever comment or evidentiary offer they deem appropriate . . . , so long as the offer or comment does not violate any other provision of this [Plea Agreement]." *Id.* at ¶ 8.

The government argued that the plain terms of the Plea Agreement allowed it to offer evidence that Defendant lied to investigators during a proffer interview on October 14, 2005. The government contended that, because Defendant lied at the proffer interview, she had "provid[ed] false information to the . . . the government; . . . attempt[ed] to obstruct justice; . . . breach[ed] th[e] [P]lea [A]greement; or . . . act[ed] in a way that is inconsistent with, or failing to act in any way that is consistent with, the granting of the adjustment under USSG §3E1.1(a)." Plea Agreement at ¶ 7. The government sought to argue that, by the plain terms of the Plea Agreement, Defendant was

6

subject to a two-level upward adjustment for obstruction of justice and was not entitled to a three-level downward adjustment for acceptance of responsibility. The government maintained that Defendant could not rely on the sentence contemplated in the Plea Agreement, because the Plea Agreement repeatedly states that the government cannot promise what actual sentence the court will impose.

Defendant admitted that, at the proffer interview, she was not completely truthful and gave incomplete and misleading information about her role in the bank robbery. Defendant alleges, however, that the government surely knew this when the proffer negotiations stalled in October of 2005. In other words, the Plea Agreement was not based on Defendant's lies. Defendant points out that she stipulated to the facts of the bank robbery in the Plea Agreement. *See id*. at ¶ 21(A)-(R). Defendant stipulated that, during the bank robbery, she waited for her co-defendants in a car near Highway 20 outside Iowa Falls and met up with them after the bank robbery. *See id*.

### A. *Acceptance of Responsibility*

The court found that the plain terms of the Plea Agreement show that the parties agreed that Defendant was entitled to acceptance of responsibility, unless she "*subsequently fail[ed]*" to act in a manner consistent with acceptance of responsibility. Plea Agreement at ¶ 7 (emphasis added). The Plea Agreement was signed in December of 2005. The alleged obstructive conduct at the proffer interview occurred in October of 2005, that is, approximately two months before the parties signed the Plea Agreement. Therefore, the court found that the government was barred from arguing at sentencing that Defendant was not entitled to acceptance of responsibility based upon her conduct at the proffer interview.

The language of the Plea Agreement is clearly distinguishable from other plea agreements that do not impose such a temporal cut-off. *Cf. United States v. Little Hawk*,

449 F.3d 837, 840 (8th Cir. 2006) (holding government did not breach a plea agreement when it failed to recommend that Defendant was entitled to acceptance of responsibility pursuant to §3E1.1 because plea agreement stated government was not required to do so if there was "significant evidence disclosed in the presentence investigation" indicating a lack of acceptance of responsibility). If the government wanted to assure itself that it could argue at sentencing that Defendant had failed to acceptance of responsibility for acts unknown to the government but committed before the Plea Agreement was signed, it surely could have devised appropriate contractual language. *Cf. Clearly Canadian Beverage Corp. v. Am. Winery, Inc.*, 257 F.3d 880, 889 (8th Cir. 2001) (applying Missouri law and remarking that a party "could have so bargained" but did not and declining to read an additional term into a contract).

It is irrelevant that the Plea Agreement repeatedly states that the government could not guarantee what sentence the court would ultimately impose. The issue is not what sentence Defendant will ultimately receive, but what the government agreed to argue or refrain from arguing at sentencing.

In the alternative, the government argued at the Hearing that, even if the terms of the Plea Agreement did not permit the government to argue that Defendant is not entitled to acceptance of responsibility, "we have a plea agreement induced by fraud" and therefore the Plea Agreement "wouldn't be binding." It appeared the government was attempting to avoid the Plea Agreement entirely by relying on a theory of fraudulent inducement. *See* Restatement (Second) Contracts § 164(1) ("If a party's manifestation of assent is induced by either a fraudulent or a material misrepresentation by the other party upon which the recipient is justified in relying, the contract is voidable by the recipient."); *see also, e.g., Nw. Bank & Trust Co. v. First Ill. Nat'l Bank*, 354 F.3d 721, 725 (8th Cir. 2003) (discussing fraudulent inducement under Iowa law).

8

The government did not discuss fraudulent inducement in its sentencing memoranda or cite any authority to the court that would allow it to avoid the terms of the contract. As a consequence, the government waived its argument that the Plea Agreement was not binding due to fraudulent inducement. *See* Order Setting Sentencing Hearing, at ¶ 10 (docket no. 140) ("If a party does not file its sentencing memorandum in a timely manner or if a brief citing to legal authority is not filed, the Court will consider the issues . . . waived."); *see id.* at ¶ 3(c) (requring sentencing memorandum to include "all issues counsel will ask the Court to decide, with a separate brief that contains a citation to all . . . case law . . . relied on in support of counsel's position."). In any event, the court found the government had not proven it justifiably relied on a fraudulent or material misrepresentation, which Defendant made at the proffer interview in October of 2005, when the government signed the Plea Agreement in December of 2005. *See, e.g.*, Restatement (Second) Contracts § 162(2) (stating that a misrepresentation is "material . . . if the maker knows that it would be likely to induce the recipient to manifest his assent").

### B. Obstruction of Justice

The court found that the Plea Agreement did not, however, bar the government from pursuing a two-level upward adjustment for obstruction of justice. At the Hearing, Defendant admitted that the plain terms of the Plea Agreement did not foreclose the government from making such an argument. Instead, Defendant contended that the Plea Agreement "tacitly" forbade the government from seeking an upward adjustment for obstruction when the parties agreed that Defendant qualified for acceptance of responsibility.

The court interpreted the Plea Agreement as written and did not rewrite it to contain additional terms. *See, e.g., Clearly Canadian*, 257 F.3d at 889 (remarking that "[t]his court will not construe an unambiguous contract to contain a . . . provision where the

parties chose not to include such a provision"). The Plea Agreement does not contain a promise on the part of the government not to argue for or offer evidence in support of an upward adjustment for obstruction of justice. Moreover, the Plea Agreement specifically states that "[t]he parties make no other stipulations regarding offense level adjustments or guideline enhancements." Plea Agreement at ¶ 8. Although the court recognizes that only in "extraordinary cases" should a court grant a downward adjustment for acceptance of responsibility and an upward adjustment for obstruction, such a scenario is not impossible. USSG §3E1.1 cmt. (n.4); *see, e.g., United States v. Marshall*, 133 Fed. Appx. 344, 346 (8th Cir. 2005) ("[I]n an 'extraordinary case' a court may sanction a defendant for obstruction, yet grant an adjustment for acceptance of responsibility."); *United States v. Perez*, 270 F.3d 737, 739 (8th Cir. 2001) (same).

### C. Remedy

Accordingly, the court granted in part and denied in part Defendant's motion for specific performance. The court ruled that the government was not entitled to present evidence or argue that Defendant was not entitled to acceptance of responsibility for conduct occurring before the Plea Agreement was signed,[4] but could present evidence and

---

[4] The court held that the government was entitled to present evidence and argue that Defendant was not entitled to acceptance of responsibility for conduct occurring after the Plea Agreement.

On August 10, 2006, the government filed a supplemental sentencing memorandum. On August 11, 2005, Defendant objected and argued that the supplemental sentencing memorandum was untimely. At the Hearing, Defendant withdrew her objection to the untimeliness of the supplemental sentencing memorandum. Because the supplemental sentencing memorandum was simply a written version of the argument the government sought to present at the Hearing, the court granted the government leave to file the supplemental sentencing memorandum.

In the supplemental sentencing memorandum, the government argued that Defendant
(continued…)

10

argue that she obstructed justice.[5] The court ordered that the terms of the Plea Agreement should be specifically enforced, because Defendant relied on the government's promises when she signed the Plea Agreement and enforcement of the government's promises was in the public interest. *See Margalli-Olvera*, 43 F.3d at 354-55 (stating that "[s]pecific performance is the preferred remedy" but requiring court to first consider possible prejudice to Defendant, the conduct of the government and the public interest) (citing *United States v. Walker*, 927 F.2d 389, 391 (8th Cir. 1991)).[6]

---

[4](…continued)
lied to the USPO in a letter dated April 27, 2006. Among other things, Defendant lied when she attempted to minimize her role in the armed bank robbery and stated she did not smoke marijuana on the day of the robbery. Clearly, the government was entitled to argue that Defendant did not accept responsibility because she made such false statements to the USPO; the conduct occurred after the Plea Agreement was signed. *See* Plea Agreement at ¶ 7 ("[T]he government shall be free to contest the adjustment under USSG §3E1.1(a) should the [D]efendant subsequently fail to continue to accept responsibility . . . by providing false information to . . . the [USPO] . . . ."); *cf. United States v. Amato*, 356 F.3d 216, 220 (2d. Cir. 2004) (holding lawyer's factual representations in a letter submitted on defendant's behalf at a bail revocation hearing were admissible against defendant in jury trial).

[5] The court notes that, on the facts of this case, the evidence sought to be presented on the acceptance of responsibility issue is the same as the evidence sought to be presented on the obstruction of justice issue. The court also has an independent right to hear all evidence regarding acceptance of responsibility.

[6] After the court interpreted the Plea Agreement and ordered that the government would not be permitted to argue or offer evidence to show that Defendant did not accept responsibility before the Plea Agreement was signed, Defendant urged the undersigned to recuse herself based on "the government's breach of the Plea Agreement." *Cf. Thompson*, 403 F.3d at 1041 (remanding to the district court for resentencing before a different judge after it was determined that government breached Plea Agreement). The court denied Defendant's motion. The court ruled that the government had not yet breached the Plea

(continued…)

## V. ADVISORY SENTENCING GUIDELINES ISSUES

The applicable sentencing guideline for Defendant's violations of 18 U.S.C. §§ 2 and § 2113(a) and (d) is USSG §2B3.1. *See* USSG App. A. The parties agreed that Defendant's base offense level is 20. USSG §2B3.1(a). The parties also agreed that a two-level upward adjustment is warranted pursuant to USSG §2B3.1(b)(1) and a two-level upward adjustment is warranted pursuant to USSG §2B3.1(b)(7)(C), because Defendant's offense involved the taking of the property of a financial institution and an amount of loss in excess of $50,000. The court agreed and made the corresponding factual findings.

### A. Use of Firearm

The first issue the court decided in calculating Defendant's advisory guidelines range was whether Defendant was subject to an additional six-level increase pursuant to USSG §2B3.1(b)(2)(B) for the use of a firearm. Section §2B3.1(b) provides:

> (b) Specific Offense Characteristics
> * * *
> (2) (A) If a firearm was discharged, increase by **7** levels; (B) if a firearm was otherwise used, increase by **6** levels; (C) if a firearm was brandished or possessed, increase by **5** levels; (D) if a dangerous weapon was otherwise used, increase by **4** levels; (E) if a dangerous weapon was brandished, or possessed, increase by **3** levels; or (F) if a threat of death was made, increase by **2** levels.

---

[6](…continued)
Agreement, only argued about how to interpret the Plea Agreement. As indicated, the court ordered specific performance of the Plea Agreement and forbade the government from making arguments or offering evidence that would breach it. *Cf. id.* (district court heard "unrequested advocacy . . . that . . . breached the plea agreement"). In any event, Defendant did not make her recusal request in a timely fashion in her sentencing memorandum. And, even if the court had considered improper argument or evidence (which it did not), there is no reason to "question the fairness of the sentencing judge" under such circumstances. *Cf. id.*

USSG §2B3.1(b) (emphasis in original). The government must prove the alleged use of the firearm by a preponderance of the evidence. *United States v. Dawn*, 897 F.2d. 1444, 1450 (8th Cir. 1990).[7]

Defendant contended that a firearm enhancement was not warranted because she was not aware that any of her co-conspirators possessed a firearm. She admitted, through counsel, that one of the co-conspirators showed her the firearm and stuck it into her side in a playful manner more than a week before the bank robbery, but she thought it was a toy gun. Defendant, therefore, claimed it was not reasonably foreseeable to her that a real firearm would be used in the bank robbery that she aided and abetted.

The court found Defendant's explanations unpersuasive. At the Hearing, both Smith and Slaughter testified that Defendant helped them buy the firearm from one of her friends in Fort Dodge, Iowa. Defendant examined the firearm after her co-defendants bought it, handled it, mock-cocked it, and mock-fired it. The court finds this aspect of the testimony of Smith and Slaughter to be credible. Some inconsistencies in their testimony was to be expected, as all five co-defendants smoked marijuana before robbing the bank.

The court examined the firearm and found it incredible that Defendant thought the firearm was a toy. The firearm is clearly a real firearm and Defendant knew it was real

---

[7] In her brief, Defendant argued that, if the court accepted all of the government's arguments and adopted the alternative guidelines calculation in the PSIR, the court had to apply a clear-and-convincing standard of proof because upward adjustments would "dramatically alter[]" the court's sentencing options. *See, e.g., United States v. Mezas de Jesus*, 217 F.3d 638, 643 n.8 (9th Cir. 2000) (holding government was required to prove facts by clear and convincing evidence because the facts would have a disproportionate effect) (citing, in part, *United States v. Townley*, 929 F.2d 365, 369-70 (8th Cir. 1991)). Because the court rejected many of the government's arguments and did not adopt the alternative guidelines calculation, the court did not address this argument. It was moot. The court, therefore, also did not address the government's argument that Defendant breached the Plea Agreement by arguing for a higher burden of proof.

and would be used in the bank robbery. The court also found that Defendant kept the firearm at her house for a time before the robbery. Defendant told her co-defendants to use the firearm, because, that way, they would get more money.

Accordingly, the court found it was reasonably foreseeable to Defendant that the firearm would be used in the bank robbery, brandished and pointed at the back of a bank employee's head. *See, e.g., United States v. Hourston*, 97 Fed. Appx. 53, 54 (8th Cir. 2004) (holding that defendant was liable for a five-level USSG § 2B3.1(b)(2)(C) enhancement for brandishing a firearm because she obtained the firearm for an armed bank robbery, even though she was not present during the robbery, never possessed the firearm and a jury acquitted her of a related weapons charge), *vacated on other grounds at* 543 U.S. 1106 (2005), *reinstated at* 134 Fed. Appx. 108 (8th Cir. 2005), *cert. denied*, 126 S. Ct. 1448 (2006). In any event, the court found that the use of the firearm in the robbery was procured, aided and abetted by Defendant. For all of the foregoing reasons, the court found a six-level upward adjustment was warranted pursuant to USSG §2B3.1(b)(2)(B). *See* USSG §1B1.3 (including acts procured and aided and abetted by defendant, as well as all "all reasonably foreseeable acts . . . in furtherance of [a] jointly undertaken criminal activity that occurred during the commission of the offense of conviction [or] in preparation for that offense" as relevant conduct).[8]

---

[8] Defendant did not argue that a six-level enhancement was not appropriate once it is determined that the use of the firearm was reasonably foreseeable to her. In the Plea Agreement, Defendant stipulated that one of her co-defendants "put a gun to the back of the Branch Manager's head and told him not to move." Plea Agreement at ¶ 21(I). The act of pointing a firearm at a bank employee's head while giving orders warrants a six-level enhancement pursuant to USSG §2B3.1(b)(2)(B), as opposed to a five-level enhancement for "brandishing" pursuant to USSG §2B3.1(b)(2)(C). *See, e.g., United States v. LaFortune*, 192 F.3d 157 (1st Cir. 1999) (citing, in part, *United States v. Elkins*,

(continued…)

Defendant's liability for the use of the firearm is analogous to co-conspirator liability under the *Pinkerton* doctrine. Defendant and her co-defendants were each members of the armed bank robbery conspiracy and they acted in furtherance of the conspiracy when the firearm was carried, displayed and used. Lastly, the acts of carrying, displaying and using the firearm were reasonably foreseeable to Defendant and the other members of the conspiracy as a natural outgrowth of the conspiracy. *See United States v. Bailey*, 235 F.3d 1069, 1074 (8th Cir. 2000) (discussing *Pinkerton v. United States*, 328 U.S. 640, 647-48 (1946), applying same three-part test and finding co-conspirators liable for firearm use under 18 U.S.C. § 924(c)).

Accordingly, the court found Defendant was subject to a six-level upward adjustment for use of a firearm in the armed bank robbery pursuant to USSG §2B3.1(b)(2)(B). This brought Defendant's adjusted offense level to **30**.

### *B. Role*

The second issue in calculating Defendant's advisory guidelines sentencing range was whether Defendant was subject to a four-level increase pursuant to USSG §3B1.1 for her role in the offense. In pertinent part, USSG §3B1.1 provides:

> Based on the defendant's role in the offense, increase the offense level as follows:
>
> (a) If the defendant was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive, increase by **4** levels.

USSG § 3B1.1(a) (emphasis in original). The government bears the burden of proving, by a preponderance of the evidence, the facts necessary to establish Defendant's role in the

---

[8](…continued)
16 F.3d 952, 953-54 (8th Cir. 1994)).

offense. *United States v. Zimmer*, 299 F.3d 710, 719 (8th Cir. 2002).

A "participant" is " a person who is criminally responsible for the commission of the offense, but need not have been convicted." USSG §3B1.1, cmt. (n.1). The parties agreed that the armed bank robbery involved five participants.

The fighting issue was whether Defendant was an "organizer" or "leader" of the armed bank robbery. The terms "organizer" and "leader" are to be construed broadly. *Zimmer*, 299 F.3d at 719. There can be more than one "organizer" or "leader" of a criminal activity. *Id.* It is not necessary that Defendant organized or led all of her co-defendants. *Id.* A defendant who recruits accomplices and directs their activities is an "organizer" and "leader." *Id.*

The court found the government did not meet its burden of proving that Defendant was an organizer or a leader of the armed bank robbery. Although it is true that Defendant helped her co-defendants procure the firearm used in the robbery and encouraged them to use a firearm so they could get more money, it just as likely to the court that on the whole Defendant was equally culpable, not more culpable, than her co-defendants.

Accordingly, the court found Defendant was not entitled to a four-level increase pursuant to USSG §3B1.1 for her role in the offense.

### C. *Obstruction of Justice*

The third issue the court decided in calculating Defendant's advisory guidelines sentencing range was whether Defendant was subject to a two-level increase pursuant to USSG §3C1.1 for obstruction of justice. Section 3C1.1 provides:

> If (A) the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice during the course of the investigation, prosecution, or sentencing of the instant offense of conviction, and (B) the obstructive conduct related to (i) the defendant's offense of conviction and any relevant conduct; or (ii) a closely related

offense, increase the offense level by **2** levels.

USSG §3C1.1 (emphasis in original). The government bears the burden to prove an increase is warranted by a preponderance of the evidence. *United States v. Vinton*, 429 F.3d 811, 818 (8th Cir. 2005).

The government contended Defendant obstructed justice because she gave materially false and incomplete statements to law enforcement officers at the October of 2005 proffer interview and that she lied to the USPO in a letter dated April of 2006. The government argued that the false information impeded the government's investigation of the bank robbery.

The court found that the government proved by a preponderance of the evidence that Defendant willfully obstructed or impeded or attempted to obstruct or impede the administration of justice during the investigation, prosecution or sentencing of the instant offense of conviction. *See* USSG §3C1.1. An enhancement for obstruction is warranted when the Defendant is found to have "provid[ed] materially false information to a probation officer in respect to a presentence or other investigation for the court." *Id.* at cmt. (n.4(h)). Information is "material" when it "would tend to influence or affect the issue under determination." *Id.* cmt. (n.6). The court found that Defendant provided materially false information to Supervising United States Probation Officer Todd Huss when her counsel wrote a letter to the USPO dated April 27, 2006. In a number of respects, Defendant denied her role in obtaining the firearm and its use in the armed bank robbery. The false statements were material because they were attempts to deny knowledge of the firearm in the jointly undertaken criminal activity.

Accordingly, the court found the government met its burden to prove Defendant was subject to a two-level increase pursuant to USSG §3C1.1 for obstruction of justice. This brought Defendant's adjusted offense level to **32**.

### D. Acceptance of Responsibility

The fourth issue in calculating Defendant's advisory guidelines sentencing range was whether Defendant was entitled to a three-level decrease pursuant to USSG §3E1.1 for acceptance of responsibility. Section 3E1.1 provides:

> (a) If the defendant clearly demonstrates acceptance of responsibility for his offense, decrease the offense level by **2** levels.
>
> (b) If the defendant qualifies for a decrease under subsection (a), the offense level determined prior to the operation of subsection (a) is level 16 or greater, and upon motion of the government stating that the defendant has assisted authorities in the investigation or prosecution of his own misconduct by timely notifying authorities of his intention to enter a plea of guilty, thereby permitting the government to avoid preparing for trial and permitting the government and the court to allocate their resources efficiently, decrease the offense level by **1** additional level.

USSG §3E1.1 (emphasis in original). Defendant bears the burden to prove she was entitled to a downward adjustment for acceptance of responsibility. *United States v. Honken*, 184 F.3d 961, 968 (8th Cir. 1999). Only in extraordinary cases is a defendant entitled to a downward adjustment for acceptance of responsibility after the court has found that the defendant has obstructed justice. *See id.* at 967-68 (citing USSG §3E1.1 cmt. (n.4)).

To determine whether a defendant qualifies for acceptance of responsibility, the court may consider whether that defendant "truthfully admit[s] the conduct comprising the offense[] of conviction, and truthfully admit[s] or not falsely den[ies] any additional relevant conduct for which the defendant is accountable." USSG §3E1.1, cmt. (n.1(a)). Although a defendant is not required to volunteer relevant conduct to obtain acceptance of

responsibility, "a defendant who falsely denies, or frivolously contests, relevant conduct that the court determines to be true has acted in a manner inconsistent with acceptance of responsibility." *Id.* "The sentencing judge is in a unique position to evaluate a defendant's acceptance of responsibility," and her determination in this regard "is entitled to great deference on review." *Id.* cmt. (n.5).

The court found Defendant did not meet her burden to prove she has clearly demonstrated acceptance of responsibility. The court recognized that Defendant pled guilty to Count 2 in a timely fashion and admitted a factual basis for the offense in the stipulation of facts to the Plea Agreement. The mere act of pleading guilty, however, does not entitle a defendant to a reduction in offense level for acceptance of responsibility. *United States v. Byrd*, 76 F.3d 194, 196 (8th Cir. 1996). As indicated, Defendant falsely denied relevant conduct for which she is accountable: namely, Defendant falsely denied that she procured the firearm for the robbery, falsely denied that she urged her co-defendants to use the firearm, and frivolously stated that she thought the firearm was a toy. In her colloquy at sentencing, Defendant falsely characterized herself as a minor player in the bank robbery. In any event, considering the totality of the circumstances this is not an "extraordinary case" in which both an upward adjustment for obstruction of justice and a downward adjustment for acceptance of responsibility apply. *See Honken*, 184 F.3d at 970 ("[W]hen the Commission refers to an 'extraordinary case,' it means a situation that is extremely rare and highly exceptional. Thus the terms of §3E1.1, application note 4 require an obstructive defendant to do more than merely cease obstructive conduct and plead guilty to the underlying offense to earn a downward adjustment for acceptance of responsibility.").

Accordingly, the court found Defendant was not entitled to a three-level downward adjustment for acceptance of responsibility. USSG §3E1.1.

## V.  CONCLUSION

The court granted in part and denied in part Defendant's motion for specific performance of the Plea Agreement.  The court ruled that the government was not entitled to present evidence or argue that Defendant was not entitled to acceptance of responsibility for statements she made at a proffer interview in October of 2005, but the government could present evidence and argue that she obstructed justice. The court found that **Defendant's base offense level under the advisory Sentencing Guidelines was 20**. USSG §2B3.1(a).  The court found Defendant was subject to a **two**-level upward adjustment pursuant to USSG §2B3.1(b)(1); a **two**-level upward adjustment pursuant to USSG §2B3.1(b)(7)(C); a **six**-level upward adjustment pursuant to USSG §2B3.1(b)(2)(B); and a **two**-level upward adjustment pursuant to USSG §3C1.1.  The court found Defendant's **adjusted offense level was 32**.  Because Defendant was **Criminal History Category I**, the court found that **Defendant's advisory Sentencing Guidelines range was 121 to 151 months' imprisonment.**  *See* USSG Sentencing Table.

**IT IS SO ORDERED.**

**DATED** this 14th day of August, 2006.

_____
LINDA R. READE
JUDGE, U. S. DISTRICT COURT
NORTHERN DISTRICT OF IOWA